25CA1026 Peo in Interest of BG 10-23-25

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1026
Archuleta County District Court No. 23JV30005
Honorable Nathaniel Baca, Judge

---

The People of the State of Colorado,

Petitioner,

In the Interest of B.G., J.G., and P.G., Children,

and Concerning C.G.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE MEIRINK
Brown and Fox, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 23, 2025

---

Cathleen M. Giovanni, County Attorney, Mark Olguin, Assistant Attorney, Pagosa Springs Colorado, for Petitioner

Josie Burt, Counsel for Youth, Glenwood Springs, Colorado, for B.G. and J.G.

Josie Burt, Guardian Ad Litem, for P.G.

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

¶ 1    In this dependency or neglect action, C.G. (mother) appeals the judgment allocating parental responsibilities for B.G., J.G., and P.G. (the children) to the children's adult sibling, I.G., (sister).[1]  We affirm the judgment.

## I.    Background

¶ 2    In April 2023, the Archuleta County Department of Human Services (Department) filed a petition in dependency or neglect, alleging, among other things, that mother's mental health needs prevented her from providing proper parental care for the children.

¶ 3    The children were initially placed with maternal grandmother, then in a traditional foster home, before they were placed in sister's care, where they remained throughout the remainder of the proceedings.

¶ 4    Mother admitted to the allegations in the petition and the juvenile court adjudicated the children dependent and neglected. The court then adopted a treatment plan for mother.

¶ 5    Later, the Department moved for an allocation of parental responsibilities (APR) and requested that sister have sole custody

---

[1] A fourth child, A.G., was subject to the case when it first began but turned eighteen shortly before the APR hearing.

and decision-making authority over the children. Mother requested sole custody and asked the court to return decision-making authority of the children to her. Following a two-day contested APR hearing, the court allocated sole custody and decision-making authority to sister. Mother appeals.

## II. Mother's Contention

¶ 6 Mother's sole contention on appeal is that the evidence was insufficient to establish a compelling reason to grant physical custody of the children to sister and, therefore, the juvenile court erred by entering the APR. We disagree.

### A. Standard of Review and Applicable Law

¶ 7 The allocation of parental responsibilities is a matter within the juvenile court's discretion. *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15. A juvenile court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or is based on a misapplication of the law. *People in Interest of M.W.*, 2022 COA 72, ¶ 12.

¶ 8 In dependency or neglect proceedings, the juvenile court has jurisdiction to allocate parental responsibilities between parents and nonparents. § 19-3-508(1)(a), C.R.S. 2025; *People in Interest of*

*H.K.W.*, 2017 COA 70, ¶ 12. An allocation of parental responsibilities is governed by the Children's Code. *People in Interest of J.G.*, 2021 COA 47, ¶ 13. The overriding purpose of the Children's Code is to protect the children's welfare and safety by providing procedures to serve the children's best interests. *Id.* at ¶ 19. Therefore, the court must allocate parental responsibilities in accordance with the children's best interests. *People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011).

¶ 9 Although a finding of parental unfitness is not required, *People in Interest of M.D.*, 2014 COA 121, ¶ 43; *L.B.*, 254 P.3d at 1208, the court may only award permanent custody of children to a nonparent if the moving party establishes a compelling reason why it is in the children's best interests for the nonparent to have custody.

¶ 10 It is for the court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence, and to assess the credibility of witnesses. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010). And when the juvenile court's findings have record support, its resolution of conflicting evidence is binding on review. *B.R.D.*, ¶ 15. But whether the court applied the

3

correct legal standard in making its findings is a question of law that we review de novo. *People in Interest of N.G.G.*, 2020 COA 6, ¶ 10.

## B.  Analysis

¶ 11    The juvenile court found that "the evidence is clear here that [mother] simply doesn't have the skills at this time to act in the best interests of her child[ren]."  Specifically, the court noted that mother had not addressed her mental health needs and that there "continue[d] to be erratic behavior from [m]other."  The court further determined "that there's clear and convincing evidence here, that there is a compelling reason to allocate parental responsibilities to [sister]," "that the APR is in the best interest of the children," and that sister had done an "exceptional" job ensuring the children's needs were met.  These findings have record support.

¶ 12    Mother's treatment plan required her to (1) develop a positive working relationship with the Department, to include maintaining contact with the Department and updating the caseworker of any moves; (2) gain an understanding of and demonstrate how to appropriately meet the children's needs; and (3) participate in a

mental health evaluation and engage in any recommended treatment.

¶ 13　The record shows that mother did not successfully complete any component of her treatment plan.  Mother never demonstrated stability with her living situation and did not apprise the caseworker of her various moves, and the caseworker was unable to reach mother for long periods of time.  Mother did not provide the Department any evidence she completed a parenting class.  Mother's family time with the children was sporadic.  When mother did attend family time, the children were reportedly so anxious about mother's erratic behavior that they requested it be supervised by the Department.  Mother refused to engage in family time once the Department began supervising visits again, despite the Department's attempts to engage her.

¶ 14　Most importantly, significant concerns about mother's mental health needs remained at the time of the APR hearing.  The caseworker testified that mother had never engaged in a mental health or psychological assessment.  Though mother testified she had engaged in some therapy, mother never provided any evidence of this to the Department.  The caseworker further reported that

when mother visited the caseworker's office two months before the APR hearing, mother becamea "very erratic" and her body language "escalated" during a meeting to the point that the caseworker feared for her own safety and ended the meeting. Even still, ten days before the APR hearing mother reportedly showed up to the family home when she knew sister would not be there, against court orders, and attempted to convince law enforcement that she was the custodial parent.

¶ 15 Ultimately, the caseworker opined that mother had not successfully completed any component of her treatment plan and that the concerns that led to the Department's involvement with the family still existed at the time of the APR hearing.

¶ 16 Furthermore, while mother asserts that the children were exposed to drug use and inappropriate sexual behavior in sister's home, the caseworker testified that she had investigated the concerns and determined that the issues either did not appear to exist or had been appropriately addressed by sister. The caseworker had no concerns about sister's ability to provide for the children's needs, and the children were "happy and thriving" in her

care. The caseworker also reported that the children wished to remain with sister.

¶ 17 Accordingly, because the record supports the juvenile court's findings, and the court applied the correct legal standard and burden of proof, we discern no abuse of discretion in the entry of the APR order.

### III. Disposition

¶ 18 The judgment is affirmed.

JUDGE FOX and JUDGE BROWN concur.